UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOARDS OF TRUSTEES OF THE LOCALS 302 AND 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS CONSTRUCTION INDUSTRY HEALTH AND SECURITY FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONKEY HOOF LLC, a Washington limited liability company, Contractor's License No. DONKEHL791J9, UBI No. 604 629 660, <br><br> Defendant. | CASE NO. 2:22-cv-00731-JHC <br><br> ORDER |

# I

## INTRODUCTION

This matter comes before the Court on Plaintiffs Boards of Trustees of the Locals 302 and 612 of the International Union of Operating Engineers Construction Industry Health and Security Fund, Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Fund, and Western Washington Operating Engineers-Employers Training Trust Fund's (collectively, "Trust Funds") Motion for Default Judgment against Defendant Donkey Hoof LLC. Dkt. #8. The motion is unopposed. *See generally* Dkt.

ORDER - 1

The Court has considered the motion, the record, and the applicable law. Being fully advised, the Court DENIES the motion without prejudice.

## II

### BACKGROUND

In 2018, Defendant Donkey Hoof entered into a collective bargaining agreement (CBA) with Operating Engineers Local 302 and Associated General Contractors of Washington. Dkt. #8 at 4; Dkt. #9 at 9. The CBA incorporates the agreements governing the Plaintiffs Trust Funds. Dkt. #1 at 2–3. These agreements require Donkey Hoof to pay monthly employee benefit contributions to Trust Funds for the number of hours worked by employees. Dkt. #8 at 7. They also stipulate that Donkey Hoof owes the Trust Funds 12% in liquidated damages and 12% annual interest on unpaid contributions.[1]

From July 2021 through the present, Donkey Hoof has only paid some of the required employee contributions to Trust Funds. Dkt. #1 at 3. Plaintiffs filed this Complaint in May 2022 and served Defendant with process. Dkt. #1; Dkt. #2, 4. They claim that under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 (ERISA) and the CBA, Defendant owes Plaintiffs Trust Funds damages for not paying the mandatory contributions. Dkt. #1 at 3.

In August 2022, the Clerk entered an Order of Default against Defendant for failure to appear. Dkt. #7; *see* Fed. R. Civ. P. 55(a). Plaintiffs claim that Defendant owes them a total of $46,713.04, including:

(1) $36,402.37 for unpaid contributions between July 2021 and January 2022;

---

[1] The liquidated damages and interest are calculated only on unpaid contributions for the Health and Security, Retirement, and Apprenticeship and Training contribution funds. Other "ancillary funds" include the Working Dues, Union Program Fund, Political Program Fund, and International Training Fund. Dkt. #9 at 2. Plaintiffs Trust Funds collect these ancillary funds and distribute them according to the CBA. *Id.* at 2, 34–35.

ORDER - 2

(2) $3,872.05 in liquidated damages at 12% of the unpaid contributions;

(3) $3,874.12 in 12% annual interest on the balance of unpaid contributions;

(4) $700.00 in "referral attorney fees";

(5) $1,292.50 in current attorney fees; and

(6) $572.00 in litigation costs.

Dkt. # 8 at 10–11.

### III

#### DISCUSSION

A. Legal Standards

If a defendant fails to plead or otherwise defend, the clerk enters the party's default. Fed. R. Civ. P. 55(a). Then, upon a plaintiff's request or motion, the court may grant default judgment for the plaintiff. Fed. R. Civ. P. 55(b)(2); *see Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). On default judgment motions, "[t]he court must accept all well-pled allegations of the complaint as established fact, except allegations related to the amount of damages." *UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1133 (W.D. Wash. 2019) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Courts typically consider these factors for a determination of default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Default judgments are generally disfavored, so a "[d]efault judgment is appropriate only if the well-pleaded factual allegations of the complaint suffice to establish a plaintiff's entitlement to a judgment under the applicable

ORDER - 3

law." *Dentist Ins. Co. v. Luke St. Marie Valley Dental Grp., P.L.L.C.*, CASE NO. 2:21-cv-01229-JHC, 2022 WL 1984124 (W.D. Wash. June 6, 2022) (citing *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 855 (9th Cir. 2007)).

    B. Application of *Eitel* Factors

        a. Factors Weighing Against Default Judgment

The second, third, fourth, fifth, and seventh *Eitel* factors weigh against default judgment. There appear to be significant inconsistencies between Defendant's contribution compliance documents and the calculations from Plaintiffs. In the contribution forms for July 2021 through October 2021, Defendant used the number of employees who worked as the multiplier for contribution amounts, whereas Plaintiffs use the number of total employee hours worked. Dkt. #9 at 61–68. Defendant then paid Plaintiffs exactly the amounts calculated from the number of employees for the respective months. *Id.* at 224–27. This suggests a factual dispute as to Defendant's requirements under the CBA. Though the CBA only mentions employee hours as a metric for determining contribution payments, Plaintiffs do not explain the discrepancy between their calculations and Defendant's forms. *Id.* at 31–33. In several monthly reports, Defendant also does not include the ancillary funds in its contribution calculations. Dkt. #9 at 61–68. But Plaintiffs include the ancillary funds in their total amount of unpaid contributions every month—though they do not include them in liquidated damages or interest calculations. *Id.* at 61–68. This inconsistency is especially evident in the months of July 2021 through September 2021. Under the CBA, Defendant should deduct 2% of gross wages from employees for dues and pay the money from those deductions to Plaintiffs monthly. Dkt. #9 at 34. In its compliance forms from July to September, Defendant specifically noted that "302 Dues"—one of the ancillary funds categories—were not taken out until September 24, 2021. Dkt. #9 at 61–63. But Plaintiffs

still included "302 Dues" in their calculations for unpaid contributions for those months. Dkt. #9 at 61–63; 224–26. These discrepancies between Defendant's documents and Plaintiffs' calculations suggest potential disputes over material facts, weighing against default judgment on *Eitel* factor five.

These inconsistencies also cast doubt over the merits and sufficiency of the complaint, the sum of money at stake, and the validity of default judgment in this case when courts generally favor deciding cases on their merits—*Eitel* factors two, three, four, and seven.

"Courts often consider the second and third *Eitel* factors together." *Developers Sur. and Indem. Co. v. View Point Builders, Inc.*, CASE NO. C20-0221JLR, 2020 WL 3303046, at *5 (W.D. Wash. Jun. 17, 2022). Plaintiffs claim that Defendant is liable for damages because it failed to pay employee contributions outlined under ERISA and the CBA between July 2021 and January 2022. Dkt. # 1 at 3. Under Section 515 of ERISA, employers must pay contributions that are required "under the terms of the plan or under the terms of a collectively bargained agreement." 29 U.S.C. § 1145. Section 502(g) of ERISA states,

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce [Section 515] in which a judgment in favor of the plan is awarded, the court shall award the plan-
>
>    (A) the unpaid contributions
>    (B) interest on the unpaid contributions
>    (C) an amount equal to the great of
>       (i) interest on the unpaid contributions, or
>       (ii) liquidated damages provided for under the plan in an amount not in excess of 20% . . .
>    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>    (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). The elements of a Section 515 claim of unpaid contributions are: "(1) the trust fund is a multi-employer plan as defined by 29 U.S.C. 1002(37); (2) the defendant is an

employer obligated to contribute under the plan's terms; and (3) the defendant failed to contribute in accordance with the plan." *Bd. of Trustees of Sheet Metal Workers Health Care Plan of N. California v. Gervasio Env't Sys.*, No. C 03-04858 WHA, 2004 WL 1465719, at *1 (N.D. Cal. May 21, 2004).

Plaintiffs submit a declaration attaching the CBA and Trust Agreements, which provide for recovery of outstanding contribution payments on employee hours plus 12% in liquidated damages and annual interest. Dkt. #9 at 98, 160, 198. But Defendant's contribution forms are the only documents in the record that identify the employees covered by the Trust Funds and confirm the number of hours they worked each month, which are key facts for Plaintiffs' claim that Defendant failed to contribute according to the CBA. *See Emp. Painters' Tr. v. Cascade Coatings*, No. C12-0101JLR, 2014 WL 526776, at *5 (W.D. Wash. Feb. 10, 2014); Dkt. #9 at 61–67. Because these documents conflict with Plaintiffs' accounting of what Defendant owes under the CBA, Plaintiffs' claim is not presently sufficient. Thus, these factors weigh against default judgment.

The fourth *Eitel* factor "considers whether the amount of money requested is proportional to the harm caused." *Sun Life Assurance Co. of Canada v. Estate of Wheeler*, CASE NO. C19-0364JLR, 2020 WL 433352, at *4 (W.D. Wash. Jan. 28, 2020). Plaintiffs request a total of $46,713.04 on default judgment, including $44,148.54 for unpaid contributions, liquidated damages, and interest. Dkt. #8 at 10, 12. Though these categories of awards are authorized under Section 502 of ERISA and the CBA, Plaintiffs' request is a significant sum. The discrepancies between the amount requested and the documents that provide key information for the calculation of that amount create doubt as to whether it is proportional to the harm Defendant caused. This factor weighs against default judgment.

ORDER - 6

Generally, cases "should be decided upon their merits whenever reasonably possible," so courts disfavor default judgment on this factor. *Eitel*, 782 F.2d at 1472. In this case, where several other factors—including the merits of Plaintiffs' claims—weigh against default judgment, this factor also weighs against granting Plaintiffs' motion. *See Emp. Painters' Tr. v. Cascade Coatings*, No. C12-0101JLR, 2014 WL 526776, at *7 (W.D. Wash. Feb. 10, 2014).

      b.  Factors Favoring Default Judgment

The first and sixth factors support default judgment in this case.

"[P]rejudice exists where the plaintiff has no recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citation and internal quotation marks omitted). Defendant has failed to respond to this action, so default judgment is Plaintiffs' only means for recovery. *See Eve Nevada, LLC v. Derbyshire*, CASE NO. 21-0251-LK, 2022 WL 279030 (W.D. Wash. Jan. 31, 2022); *Bd. of Trs. of U.A. Loc. No. 159 Health & Welfare Tr. Fund v. RT/DT, Inc.*, No. C 12-05111 JSW, 2013 WL 2237871, at *4 (N.D. Cal. May 21, 2013) ("Because ERISA provides that federal courts have exclusive jurisdiction for claims of this nature, denial of Plaintiffs' Motion would leave them without a remedy."). Thus, this factor supports default judgment.

The sixth *Eitel* factor assesses whether Defendant's default for failure to appear was because of excusable neglect. *Bds. of Trs. of Inland Empire Elec. Workers Welfare Tr. v. Excel Elec. Servs., Inc.*, No. 2:21-CV-00200-MKD, 2022 WL 1243663, at *4 (E.D. Wash. Apr. 26, 2022). Generally, courts do not find excusable neglect when defendants were properly served with the complaint. *See, e.g.*, *Maersk Line v. Golden Harvest Alaska Seafood LLC*, No. C20-1140-JLR-MLP, 2020 WL 6083464, at *4 (W.D. Wash. Sept. 30, 2020), *report and*

ORDER - 7

*recommendation adopted*, No. C20-1140 JLR, 2020 WL 6077419 (W.D. Wash. Oct. 15, 2020). Plaintiffs establish that they properly served Defendant.  *See* Dkt. #4.

In sum, the *Eitel* factors do not support default judgment.  There are potential disputes of material fact related to documents that establish an essential element of Plaintiffs' claims and estimation of damages.  These factors outweigh the possible prejudice Plaintiffs may experience without default judgment and the likelihood that Defendant's default was not due to excusable neglect.  Plaintiffs' motion for default judgment is DENIED without prejudice.

C. Damages Calculation

The Court does not accept the amount of claimed damages as true in a default judgment motion.  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  And it has determined above that there appear to be inconsistencies between the record and Plaintiffs' calculations of unpaid contributions.  Plaintiffs also do not cite to anything in the record that explains the $700.00 they requested in "referral attorney fees."  Dkt. #1 at 4; *see Bd. of Trs. of Auto. Machinists Pension Tr. v. Ross Island Sand & Gravel Co.*, No. C18-0571JLR, 2018 WL 4051806, at *2 (W.D. Wash. Aug. 24, 2018) (denying default judgment and requiring plaintiff to explain "referral attorney fees" further in an amended motion).

## IV

### CONCLUSION

For the foregoing reasons, the Court DENIES without prejudice Plaintiffs' Motion for Default Judgment. Dkt. #8.  Plaintiffs may refile with a more thorough explanation of their contribution calculations and attorney fees.

Dated this 15th day of December, 2022.

*John H. Chun*

John H. Chun
United States District Judge